UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------------X

JOSEPH MARYANOW,

                             Plaintiff,

       - against -

CAROL L. FITZGERALD, JOSEPH S. SANTANA,
PETER G. KELLY a/k/a WILLIAM E. KELLY
and TERRY L. LIERMAN,

                          Defendants.

------------------------------------------------------------X

Civ. No.:

**COMPLAINT**

*Plaintiff Demands*  JUDGE KARAS
*a Trial By Jury*

**14 CIV. 7438**

The Plaintiff, JOSEPH MARYANOW ("Maryanow"), by and through his attorneys,

Mitchell Pollack & Associates PLLC, as and for a Complaint against the Defendants, CAROL L.

FITZGERALD, JOSEPH S. SANTANA, PETER G. KELLY a/k/a WILLIAM E. KELLY and

TERRY L. LIERMAN (collectively "the Defendants"), states and alleges as follows:

## NATURE OF ACTION

1.     This action seeks recovery of damages in connection with the Plaintiff's

investments in Life Medical Technologies, Inc. ("LMT" or "the Company") pursuant to a private

offering procured by fraud in violation of federal and state securities laws. In addition, the

Plaintiff seeks damages stemming from the Defendants' breach of fiduciary duties of care and

loyalty, negligence and unjust enrichment in connection with corporate malfeasance. The

Defendants' willful, wanton, malicious and oppressive misconduct supports an award of punitive

damages and any and all other appropriate relief pursuant to applicable state and federal law that

can be inferred from the facts set forth herein, including costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §1332 in that the action is between citizens of different states and the amount in

controversy exceeds $75,000, exclusive of interest and costs. This Court also has subject matter

jurisdiction over this lawsuit pursuant to U.S.C. §1331, as the claims arise under §10(b) and §20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated by the Securities and Exchange Commission ("SEC") at 17 C.F.R. §240.10b-5.

3.      The Defendant has also stipulated to jurisdiction in the Federal Court system of the State of New York by virtue of the language contained in the Notes hereinafter mentioned.

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) because the Defendants regularly conducted business within the Southern District of New York and a substantial part of the events or omissions giving rise to this claim occurred herein.

## THE PARTIES

5.      The Plaintiff, Maryanow, is and was at all relevant times, a resident of the City of Olympia, County of Thurston, and State of Washington.

6.      LMT is a privately held, foreign corporation duly organized and existing under the laws of the State of Delaware and authorized to do business in the State of New York, with its last known principal place of business at 2070 Route 52, Building 320A/21A, Hopewell Junction, NY 12533, in the County of Dutchess, State of New York.

7.      LMT is a technology company that claimed to possess certain patents, regulatory clearance and strategic business partnerships related to a medical device known as BreastCareDTS™ ("the Device"). The Device is intended to be used in conjunction with mammography equipment for the early detection of breast cancer.

8.      Upon information and belief, Carol L. Fitzgerald ("Fitzgerald") is and was at all relevant times a resident of New York, residing at 4438 Chubb Hollow Road, Dundee, New York 14837. Fitzgerald is the former Chief Executive Officer ("CEO") and President of LMT and has been a director of LMT from June 1, 2008 to the present. Fitzgerald is also currently the Vice Chairman of LMT's Board of Directors and the Executive Director or Corporate

Development.

9.     Upon information and belief, Joseph S. Santana ("Santana") is a resident of Connecticut with a last known address of 431 Three Mile Hill Road, Middlebury, CT 06762. Santana has been the Chairman of the Board of Directors of LMT since September 22, 2010.

10.     Upon information and belief, Peter G. Kelly a/k/a William E. Kelly, is a resident of Connecticut with a last known address of 11 Vardon Road, West Hartford, CT 06117. Kelly is and was at all relevant times on the Board of Directors of LMT.

11.     Upon information and belief, Terry L. Lierman ("Lierman"), is a resident of Maryland with a last known address of 2501 Calvert Street NW, Apt. 702, Washington, DC 20008. Lierman is and was at all relevant times on the Board of Directors of LMT.

## FACTUAL BACKGROUND

12.     In or about 2007, LMT purchased the exclusive licensing rights for the Device, in North America, from Scantek Medical, Inc. ("Scantek").

13.     In or about December 2008, Scantek filed for Chapter 11 bankruptcy protection in the District Court of the State of New Jersey.

14.     On or about November 23, 2009, LMT successfully bid for and purchased all of the assets of Scantek including the equipment necessary to manufacture the Device together with a related patent designed to assist in the early detection of breast cancer.

15.     In or about early 2011, LMT, through Fitzgerald, sought financing from the Plaintiff for the explicit purpose of manufacturing, producing and bringing the Device to the market.

16.     LMT, through Fitzgerald, provided the Plaintiff with a private placement memorandum ("PPM") and offering materials pursuant to Regulation D and Section 4(6) of the Securities Act of 1933.

17.     Fitzgerald encouraged the Plaintiff's investment in LMT by representing that:  1) "the Device would make a significant impact in the early detection of breast cancer on a low cost basis;" 2) "the equipment was almost in place for production;" 3) "production would begin by the end of the summer in 2011;" 3) "the first year of production was already purchased by international buyers;" 4) his investment would permit LMT to begin manufacturing sooner; and 5) the investment was a great opportunity that was only available for a limited time.

18.     Fitzgerald and the PPM described the Device as:

> two, soft, disposable pads that are lightweight, non-invasive and are applied on each breast under the bra for 15 minutes.  Both pads have three wafer-thin foil segments and together contain 1,188 heat-sensitive chemical sensors that change color based on temperature.  By comparing the temperature of one breast to the other, temperature differences can be identified, which can be a sign of abnormal cellular activity such as breast cancer.

19.     According to the PPM and the representations of Fitzgerald, since its inception in 2004, LMT has allegedly been engaged in the following developmental business activities:

a       registering the Device in Mexico, Canada and several other countries;
b.      gaining approval for clinical trials;
c       assembling a medical advisory and business advisory boards;
d.      raising capital; and
e       establishing working relationships with various federal and
        state health agencies and several foreign government organizations.

20.     Fitzgerald advised the Plaintiff that LMT had rented the IBM facilities in Hopewell Junction, New York for one year in exchange for stock warrants in the Company and that production would be in-house.

21.     Relying upon the PPM and Fitzgerald's representations, the Plaintiff invested $75,000 in LMT, under terms set forth in a Promissory Note dated March 4, 2011 ("Note #1").

22.     Fitzgerald, who was the President and CEO of LMT at the time, coordinated the Plaintiff's investment and executed Note #1.

4

23.     Note #1 included interest at the rate of 24% per annum and contained a designated maturity date of March 3, 2012.

24.     In addition to the interest to be received pursuant to Note #1, the Plaintiff also was to receive one (1) warrant for Common Stock in LMT in an amount equal to the principal advance and all accrued interest, exercisable for $1.25 per share for 36 months from the date of the Note.

25.     Thereafter, Fitzgerald continued to represent that production of the Device would begin by the end of 2011 and that the first year of production was already sold.  This prompted the Plaintiff to invest further in LMT.

26.     Relying upon Fitzgerald's representations, the Plaintiff invested another $125,000 in LMT, under terms set forth in a Promissory Note dated May 9, 2011 ("Note #2").

27.     Fitzgerald, who was still the President and CEO of LMT, coordinated the Plaintiff's second investment and executed Note #2.

28.     Note #2 included interest at the rate of 24% per annum and contained a designated maturity date of May 8, 2012.

29.     In addition to the interest to be received pursuant to Note #2, the Plaintiff also was to receive one (1) warrant for Common Stock in LMT in an amount equal to the principal advance and all accrued interest, exercisable for $1.25 per share for 36 months from the date of the Note.

30.     Both Note #1 and Note #2 (collectively "Notes") specifically provided for all costs and expenses of collection or attempting to collect, including reasonable attorney's fees, should LMT default in connection with the Note.

31.     Both Notes were to be construed and enforced in accordance with the laws of the State of New York and to the exclusive jurisdiction of either the State or Federal Court system in

5

New York State

32.     In an email to the Plaintiff's wife, Susan, dated August 19, 2011, Fitzgerald represented that this was the "last round of funding" and that LMT "anticipate[s] closing out the investment very soon."

33.     On or about March 1, 2012, the Plaintiff advised Fitzgerald and Lynn Green, a LMT executive ("Green"), by email, that when Note #1 matured on March 3, 2012, he wished to receive monetary payments for the principal and interest due rather than convert the loan to stock.

34.     By email dated March 4, 2012, Fitzgerald requested that the Plaintiff agree to extend Note #1 for 30 days because LMT is "in the midst of the production line being completed and [is] trying to martial all of our funds to getting into production as soon as possible." Despite advising the Plaintiff's wife that LMT anticipated closing out the investment very soon, Fitzgerald further stated that "30 days would allow us to continue to move the production forward; while we complete the closing on the last million of the funding."

35.     By letter of extension dated March 22, 2012, the Plaintiff ultimately agreed to extend both Notes until January 1, 2013, under the same terms as Note #1 and Note #2.

36.     Upon information and belief, in or about mid-2012, LMT's shareholders began requesting to review LMT's financial documents to assuage concerns about their financial investments and the mismanagement of the company; including accusations of self-dealing, corporation waste, misappropriation and alcohol/cocaine abuse by Fitzgerald.

37.     Upon information and belief, during a board meeting on June 12, 2012, Director Oliver Jack Reynolds, demanded Fitzgerald's resignation and access to the company's books and records, current shareholders list and bylaws.

38.     Upon information and belief, in or about June 2012, Fitzgerald voluntarily

resigned from her position as CEO and LMT appointed Richard Glaser ("Glaser") to fill the role.

39.      Notwithstanding evidence of cocaine and alcohol abuse and shareholder concerns about her abilities as CEO, the Director Defendants permitted Fitzgerald to remain with LMT and exert influence over the Company's operations by electing her as the Vice Chairman of the Board of Directors and Executive Vice President of Business Development.

40.      Upon information and belief, it was not until August 2012 that LMT provided its financial records from 2004 through 2011 to shareholders.  While the Plaintiff did not have access to the records at that time, he has come to learn that they were improperly maintained.

41.      By email dated December 2, 2012, the Plaintiff advised Fitzgerald and Green that when the Notes matured on January 1, 2013, he wished to receive monetary payments for the principal and interest due.  The Plaintiff did not receive a response to his December 2, 2012 email and sent a follow up email on December 26, 2012.

42.      By email dated December 27, 2012, Fitzgerald forwarded the Plaintiff's email to CEO Glaser and advised the LMT is "currently working on completing funding and would like to schedule a call to discuss [Maryanow's] promissory notes."  Despite due demand, however, LMT failed to pay the principal and interest in connection with the Notes on January 1, 2013, the extended maturity date.

43.      On or about January 2, 2013, Maryanow contacted LMT again seeking information as to repayment of the Notes and offering the option of a second extension.  Since such time, the Defendants have merely responded with false promises about obtaining funding and have not agreed to Maryanow's January 2, 2013 extension proposal or repaid the Notes.

44.      Maryanow has performed all conditions, covenants and promises required by him on his part in accordance with the terms of the Notes and has been damaged as a result of the non-payment.

7

45.     At all relevant times, the Director Defendants knew or should have known that Fitzgerald was soliciting the Plaintiff's investment through patently false misrepresentations and had the power to control Fitzgerald and the fraudulent conduct, directly or indirectly, yet failed to do so.  By failing to exercise their power to prevent Fitzgerald from communicating the misrepresentations to the Plaintiff and potential investors, the Defendants participated in or aided and abetted the wrongdoing.

46.     The Plaintiff has since learned that the Director Defendants have grossly mismanaged the day-to-day operations of the Company without any rational purpose and irresponsibly wasted corporate assets and resources for their own personal use and to pay legal fees to defend themselves against shareholder lawsuits.

47.     The Plaintiff has also learned that the Defendant Directors have intentionally misrepresented information in connection with the private solicitation of investments in the Company.  The misrepresentations, include, but are not limited to:  1) understating the amount of time and funds it would take to bring the Device to the market; 2) maintaining that the first year of production had already been sold when such was not the case; 3) failing to disclose that the Company intended to use the investment funds to satisfy prior legal settlements and obligations; 4) falsifying the status of the Device's regulatory approvals and patents; 5) distorting LMT's manufacturing capabilities, the Device's international marketing initiatives and prospect for sales overseas, the existence of an exclusive distribution agreement with a Canadian healthcare company and LMT's evaluation by Atlantic Accelerator, Ltd.; and 6) manipulating the relevancy of the Device's clinical studies and the accuracy and legitimacy of the Company's financial data and sales projections.

48.     Upon information and belief, despite repeated assurances that the Plaintiff's investment would only be used to bring the Device to the market, the Director Defendants

utilized and/or misallocated the resources of LMT, including the Plaintiff's investment to: 1) fortify their control of the Company through a series of share issuances to themselves; 2) retain legal counsel paid from Company funds to protect legal challenges to their incumbency; 3) pay for the services of officers and directors who were loyal to Fitzgerald; and 4) for their own personal use and benefit.

49.     Upon information and belief, the Director Defendants have negligently permitted the revenue-generating operations of LMT to remain inactive; leading to continued operational losses and reducing the prospect of the Device reaching the market in the near future.

50.     The Defendants intentionally misrepresented the status of LMT's intellectual property rights for the Device and have allowed certain patents to lapse for failure to pay the requisite fees. The validity of these intellectual property rights were entirely under the Defendants' control and, thus, the Defendants knew or should have known the status and validity of the patents when Fitzgerald solicited the Plaintiff to extend the Notes. As a result, the Defendants have grossly neglected to capitalize on the value of patents acquired from Scantek, the sole assets of LMT, by failing to pay the requisite fees and/or produce the Device before the right to exclusively manufacture and market it expires.

51.     The Defendants have intentionally misrepresented that they had obtained Federal Drug Administration ("FDA") clearance for the Device and upon information and belief, the Defendants have negligently permitted the FDA 510K clearance to lapse for a substantial period of time due to the failure to pay certain fees. The Defendants' failure to obtain FDA 510K clearance has depreciated the value of LMT to other potential investors and prevented the Defendants from producing the Device.

52.     The Defendants have purposely misrepresented LMT's status as a "women owned business" that would allow the Company to participate in various grants and programs. Upon

9

information and belief, the Defendants failed to obtain certification that LMT was a "women owned business" and, in fact, was not a "women owned business" when the Plaintiff made his investment. Thus, LMT was unable to participate in the various grants and programs designed to assist women owned businesses, which could have provided additional funding.

53.    The Defendants irresponsibly rented space at the IBM facility in New York when they knew or should have known that the retention of Fala Technologies, Inc. ("Fala"), located in Kingston, NY, to design and construct a specifically designed, state of the art, automated assembly line for the production of the Device in 2010 would render the IBM facilities unnecessary and wasteful.

54.    Despite representations to the contrary, the Device was not registered in Europe, Canada, Mexico, Brazil and Russia and the Defendants knew or should have known that they had negligently permitted the alleged registrations to lapse due to failure to pay the requisite fees.

55.    Upon information and belief, despite representations to the contrary, the Defendants were not at the contract stage for distribution in any other country nor was LMT being evaluated by Atlantic Accelerator, Ltd.

56.    The Defendants' offering material contained representations that summarized clinical studies concerning the Device; however, the Defendants failed to disclose that these clinical studies had taken place, upon information and belief, more than ten years prior to the Plaintiff's investment and were, for all intents and purposes, outdated.

57.    The Plaintiff relied upon Fitzgerald's statements that production of the Device would begin by the end of summer 2011; however, the Defendants knew or should have known that this estimate was unreasonable and nearly impossible to achieve.

58.    Upon information and belief, the Defendants have failed to convene regular shareholder's meetings despite the requirements to do so under Delaware and New York law.

59.     The Defendants have concealed the extent of their corporate malfeasance by negligently maintaining and/or fraudulently manipulating LMT's corporate books and records, including its financial documents.

60.     At the end of fiscal year 2009, prior to the Plaintiff's investment in LMT, the company was valued at $32,688,996 (based on Note 2 of its financial statements and audit report evidencing that there were 32,688,996 common stock shares outstanding that were valued at $1.00 per share).

61.     At the end of fiscal year 2011, after the Plaintiff's investment and the Defendants had served on the Board of Directors for the past couple of years, LMT reported a value of $.0002 per share or $7,856.30.

62.     As a direct and proximate result of the Defendants' fraud, gross negligence and wanton, willful, malicious and oppressive misconduct, the Plaintiff suffered a complete loss of his investment to which the Plaintiff is entitled to compensatory damages as well as punitive damages to deter the Defendants from continuing similar wrongful behavior against current and future investors and/or deter other start-up companies from engaging in similar conduct.

### FIRST COUNT
**(Fraud in Violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934)**

63.     The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 62 of the Complaint as though fully set forth herein.

64.     The Plaintiff invested $200,000 in LMT in early 2011 pursuant to the written and oral representations of Fitzgerald and LMT's PPM, as sanctioned by the Defendant Directors.

65.     The Defendants intentionally or recklessly misrepresented and/or omitted material information in connection with the Plaintiff's investment, including, *inter alia:* 1) the amount of money needed and/or how the funds would be used to bring the Device to the market; 2) the Defendants' intention to utilize the Plaintiff's investment to satisfy prior legal settlements and

11

obligations; 3) LMT's manufacturing capabilities; 4) the status of the Company's regulatory approvals, patents and intellectual property rights; 5) the prospects for sale of the Device overseas; 6) the alleged evaluation by Atlantic Accelerator, Ltd.; 7) the alleged exclusive distribution agreement with a Canadian healthcare company; 8) the relevancy of the Device's clinical studies; and 9) the legitimacy of the Company's financial data and projections.

66.     Each of the materially false and misleading misrepresentations asserted in the Factual Background section of this Complaint were contained in the PPM and offering materials and/or provided to the Plaintiff through communications with Fitzgerald.

67.     Fitzgerald purposely intended to mislead the Plaintiff when she advised him that production of the Device would begin at the end of summer 2011 and that the first year of production had already been sold.

68.     Fitzgerald intentionally and recklessly misrepresented that all of the Plaintiff's investment would be used in the production of the Device and to bring the Device to market quicker.  Rather the Plaintiff's investment was used towards legal fees owed, corporate waste and for the Defendants' own personal use and benefit.

69.     The material misrepresentations and conduct of Fitzgerald in soliciting the Plaintiff's investment violated Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78(j), and Rule 10b-5 promulgated thereunder.

70.     At all relevant times, the Defendants knew or should have known that Fitzgerald was soliciting the Plaintiff's investment through patently false misrepresentations and had the power to control Fitzgerald and the fraudulent conduct, directly or indirectly, yet failed to do so.

71.     By failing to exercise their power to prevent Fitzgerald from communicating the misrepresentations to the Plaintiff and potential investors, the Defendants participated in or aided and abetted the wrongdoing.  The Defendants, Santana, Kelly and Lierman, are, therefore,

controlling persons pursuant to Section 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §78(t) and are jointly and severally liable to the same extent as Fitzgerald.

72.    The Plaintiff relied upon the material representations of the Defendants and the PPM and offering materials in deciding to invest in LMT and he would not have invested his money if he knew that the misrepresentations were false and inaccurate.

73.    Each of the misrepresentations contained in this Complaint were intentional, knowing and careless and the Defendants knew or recklessly disregarded that the Plaintiff would rely upon the materially false and misleading statements when deciding to invest in LMT.

74.    By virtue of the foregoing, the Defendants violated §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, in that they directly or indirectly, by the use of the means or instrumentalities of interstate commerce and/or the mails, or a facility of the national securities exchange, knowingly or recklessly employed devices, schemes and artifices to defraud the Plaintiff, made false statements of material facts or omitted to state facts that they were under a duty to speak and engaged in acts of fraud and deceit upon the Plaintiff, all in connection with the purchase or sale of a security.

75.    The Plaintiff has been damaged by the wrongful conduct of Fitzgerald and the Defendant Directors in that he was caused to invest in LMT, a company that was not worth the same without adequate funding, viable patents, FDA approval and the ability to manufacture sufficient quantities of the Device, all causing the Plaintiff to lose his entire investment.

76.    It was not until in or about 2014 that the Plaintiff discovered the fraud, corporate waste and wrongful conduct of the Defendants and that he lost his entire investment as a result of LMT's insolvency due to the illiquid and private nature of his investments together with the the fact that LMT is a private corporation that does not file public documents.

77.    As a direct and proximate result of the foregoing misconduct, the Plaintiff is

entitled to compensatory damages in an amount that has yet to be fully ascertained, but believed to be in excess of $325,826.85, together with interest at the maximum allowable rate and such other and further relief as is deemed just and warranted.

### SECOND COUNT
### (For Breach of Fiduciary Duty of Care and Loyalty)

78.     The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 62 of the Complaint as though fully set forth herein.

79.     The Plaintiff invested $200,000 in LMT in early 2011 pursuant to the written and oral representations of Fitzgerald and LMT's PPM, as sanctioned by the Defendant Directors.

80.     Fitzgerald owed the Plaintiff a fiduciary duty in the solicitation of his investment since as the CEO and President of LMT, she maintained a superior position and access to private and confidential information concerning the Company.  Once the Plaintiff invested in LMT, Fitzgerald continued to owe him a fiduciary duty to correct and/or clarify fraudulent and misleading representations made during the solicitation phase.

81.     The Defendants all owed the Plaintiff a fiduciary duty by reason of their positions as Directors of LMT and as a result of their ability to control the Company's corporate and financial affairs.  The Defendants maintained a superior position and access to private and confidential information concerning LMT and owed the Plaintiff the duty to exercise oversight, due care and diligence in the management, supervision and administration of the Company's affairs, including the use and preservation of its property, assets and shareholder investments.

82.     The Defendants breached their fiduciary duty of loyalty and care through lack of oversight, supervision and management in a willful, reckless and/or grossly negligent manner, by *inter alia*:

> a.     failing to inspect the books and records of LMT and ensure that same were being properly maintained;

b.    failing to have an independent third party audit the corporate books and records of LMT;

c.    soliciting potential investors, including the Plaintiff, with representations from the Company's CEO and a PPM that contained many misrepresentations and omissions in violation of applicable state and federal law;

d.    failing to manage, control, supervise and conduct LMT's business and financial affairs, including failing to convene regular shareholder's meetings in accordance with the law;

e.    misusing LMT's financial resources to fortify their control of the Company; to pay legal fees to protect challenges to their Incumbency; to pay for the services of officers and directors who were loyal to Fitzgerald and to cover up corporate malfeasance;

f     failing to maintain and pay the requisite fees in connection with LMT's patents, federal regulatory approvals, business relationships, manufacturing capabilities, marketing enterprises and distribution agreements in good standing; and

g.    failing to capitalize on the limited and valuable time that LMT holds the exclusive rights to market and manufacture the Device.

83.    Fitzgerald breached her fiduciary duties of loyalty and care in a willful, reckless and/or grossly negligent manner by engaging in self-dealing and utilizing corporate resources for her own personal gain as well as by failing to maintain or fraudulently manipulating the corporate books and records, failing to convene regular shareholders meetings and misrepresenting the expected date of the commencement of production of the Device and that the first year of production had already sold.

84.    The remaining Director Defendants breached their fiduciary duties of loyalty and care in a willful, reckless and/or grossly negligent manner by concealing the extent of the corporate malfeasance; by failing to control Fitzgerald's improper conduct and actions; negligently failing to maintain or actively manipulating the corporate books and records and failing to convene regular shareholder meetings.

85.    The Plaintiff has been damaged by the Defendants' willful, reckless and/or

grossly negligent misconduct because he invested and held warrants in LMT at inflated values because LMT was not worth the same without the represented level of funding, patents, FDA approval, or ability to manufacture sufficient quantities of the Device.

86.     The Plaintiff has been damaged by the Defendants' willful, reckless and/or grossly negligent misconduct because he invested and held warrants in LMT, which is now insolvent.

87.     The Defendants' collective breach of fiduciary duty and loyalty is a departure from any reasonable and ordinary due care exhibited by directors and is not protected under the law, whether by statute or common law, including the business judgment rule.

88.     As a result of the Defendants' breaches of their fiduciary duties, the Plaintiff has suffered and continues to suffer economic losses in an amount that has yet to be fully ascertained, but believed to be in excess of $325,826.85, together with reasonable costs, expenses and all allowances provided by law and/or deemed just and proper by this Court.

## THIRD COUNT
### (For Negligent Misrepresentation)

89.     The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 62 of the Complaint as though fully set forth herein.

90.     The Defendants provided the PPM and offering materials to the Plaintiff for the sole purpose of inducing him to invest in LMT.

91.     The Defendants carelessly and negligently misrepresented and/or omitted material information in the oral and written inducements by Fitzgerald and via the PPM and offering materials provided to the Plaintiff in connection with solicitation of his investment in LMT, including but not limited to:  1) the amount of funds required and/or

16

how the funds invested would be used to bring the Device to the market; 2) that production would commence during the summer of 2011; 3) that the equipment was almost in place for production; 4) that the first year of production was already purchased by international buyers; 5) the status of the Device's regulatory approvals and patents; 6) LMT's manufacturing capabilities and intent to outsource manufacturing; 7) the Device's international marketing initiatives and prospect for sales overseas; 8) LMT's evaluation by Atlantic Accelerator, Ltd.; 9) LMT's exclusive distribution agreement with a Canadian healthcare company; 10) the relevancy of the Device's clinical studies; and 11) the accuracy and legitimacy of the financial data and financial projections.

92.     The Plaintiff reasonably relied upon the materially false and misleading representations when deciding to invest in LMT and but for these misstatements, he would not have invested in the Company.

93.     The Plaintiff did not discover the fraud or that he had suffered damages until May 2014, when he learned that the Company was insolvent, as a result of the illiquid and private nature of the investments, coupled with the fact that LMT is a private corporation that does not file public financial documents.

94.     As a direct and proximate result of the foregoing misconduct, the Plaintiff is entitled to compensatory damages in an amount that has yet to be fully ascertained, but believed to be in excess of $325,826.85, together with interest at the maximum allowable rate together with such other and further relief as is deemed just and warranted.

## FOURTH COUNT
### (For Common Law Fraud)

95.     The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 62 of the Complaint as though fully set forth herein.

96.     The Defendants intentionally, knowingly and recklessly misrepresented

information contained in the PPM and offering materials to the Plaintiff in connection with his investment in LMT.

97.    The Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiff that his investment would be used to bring the Device to the market quicker. Rather, upon information and belief, LMT used the Plaintiff's investment towards legal fees owed, corporate waste and for their own personal use and benefit.

98.    The Defendants knew or should have known that the misrepresentations cited herein where materially false or omitted significant information and that the Plaintiff would rely on same when deciding to invest in LMT.

99.    The Plaintiff reasonably relied upon the oral and written misrepresentations of Fitzgerald as well as those contained in the PPM and offering materials when he decided to invest in LMT.

100.    The Plaintiff would not have invested in LMT had he known that the written and oral statements were materially false and/or had omitted significant information.

101.    The Plaintiff did not discover the fraud or that he had suffered damages until May 2014, when he learned that the Company was insolvent, as a result of the illiquid and private nature of the investments, coupled with the fact that LMT is a private corporation that does not file public financial documents.

102.    As a direct and proximate result of the foregoing misconduct, the Plaintiff is entitled to compensatory damages in an amount that has yet to be fully ascertained, but believed to be in excess of $325,826.85, together with interest at the maximum allowable rate together with such other and further relief as is deemed just and warranted.

## FIFTH COUNT
### (For Common Law Negligence)

103.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 62 of the Complaint as though fully set forth herein.

104.    The Defendants intentionally, knowingly and recklessly misrepresented information contained in the PPM and offering materials to the Plaintiff in connection with his investment in LMT.

105.    The Defendants owed the Plaintiff a duty of ordinary and reasonable care and good faith, which arose as a result of Plaintiffs' investment in LMT.

106.    The Defendants breached their duty of ordinary and reasonable care by, *inter alia*: 1) failing to inspect the corporate books and records, including failing to ensure that corporate books and records were being maintained at all; 2) failing to have the corporate books and records audited by an independent third party; 3) failing to manage, control, supervise and direct LMT's financial affairs business in accordance with the law; 4) failing to convene regular shareholders meetings; 5) wasting LMT's financial resources to fortify their own positions and control of the Company, retaining legal counsel paid with LMT funds to protect legal challenges to their incumbency, and overpaying officers and directors that were loyal to Fitzgerald; 6) failing to capitalize on the limited and valuable time that LMT holds the exclusive rights to market and manufacture the Device; 7) failing to maintain the Company's patents, federal regulatory approvals, business relationships, manufacturing capabilities, international marketing initiatives, and distribution agreements in good standing; 8) failing to control Fitzgerald's activities which, upon information and belief, included utilizing LMT assets for her own personal use and illicit behavior; 9) failing to terminate Fitzgerald upon becoming aware of her alleged alcohol and drug abuse; and 10) negligently or knowingly permitting

Fitzgerald to violate applicable federal and state law with respect to soliciting investments on behalf of LMT.

107.    As a direct and proximate result of the Defendants' negligence, the Plaintiff has suffered and continues to suffer economic losses in an amount that has yet to be fully ascertained, but believed to be in excess of $325,826.85, together with reasonable costs, expenses and all allowances provided by law and/or deemed just and proper by this Court.

**SIXTH COUNT**
**(For Unjust Enrichment)**

108.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 62 of the Complaint as though fully set forth herein.

109.    The Defendants intentionally, knowingly and recklessly solicited the Plaintiff to invest in LMT under false pretense insofar as the PPM and offering materials as well as oral and written statements made by Fitzgerald misrepresented and/or omitted pertinent information as set forth above.

110.    Fitzgerald represented to the Plaintiff that his investments would be allocated towards bringing the Device to market quickly.  This was not true.

111.    Fitzgerald told the Plaintiff that the first year of production was already sold.  This was not true.

112.    Fitzgerald solicited the Plaintiff's investment by stating that "the equipment was almost in place for production" and "production would begin by the end of the summer in 2011." These statements were also not true.

113.    Fitzgerald engaged in self-dealing, drained corporate assets for her own personal use and benefit and, upon information and belief, engaged in illegal behavior using corporate assets.

20

114.    The remaining Defendants failed to control Fitzgerald and permitted her to solicit investments despite knowledge of her illicit behavior and fraudulent misrepresentations.

115.    The Defendants, through their wrongful acts and omissions alleged herein, have received funds that they were not entitled to and were unjustly enriched at the expense of and to the detriment of the Plaintiff.

116.    The Defendants knowing receipt and retention of the Plaintiff's investment under these circumstances is unjust and inequitable.

117.    No other remedy at law can adequately compensate the Plaintiff for the economic damages resulting from the Defendants' wrongful actions as alleged herein.

118.    The Plaintiff seeks restitution from the Defendants and an order of this Court disgorging all profits, benefits and other compensation obtained by LMT and the Defendants from their wrongful conduct.

## SEVENTH COUNT
### (For Punitive Damages)

119.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 62 of the Complaint as though fully set forth herein.

120.    As set forth herein, the Defendants breached their fiduciary duty of care and loyalty to the Plaintiff in a willful, reckless and/or grossly negligent manner that rises to the level of wantonness, malice, oppression, and willfulness sufficient to require punitive damages under the law.

121.    The Defendants' wanton, malicious, oppressive, and willful misconduct requires an award of punitive damages so as to:  1) act as retribution against the Defendants; 2) deter the Defendants from committing similar wrongs against investors in the future if LMT ever becomes a public company; and 3) to deter other start-up

21

companies from engaging in similar behavior.

122.   As a result of the foregoing, the Plaintiff is entitled to punitive damages.

## DEMAND FOR RELIEF

**WHEREFORE,** the Plaintiff, JOSEPH MARYANOW, prays for judgment against the Defendants, Carol Fitzgerald, Joseph Santana, Peter Kelly and Terry Lierman, as follows:

(A)   as to the First Count, awarding compensatory damages in an amount that has yet to be fully ascertained, but believed to be in excess of $325,826.85, together with interest at the maximum allowable rate and such other and further relief as is deemed just and warranted; and/or

(B)   as to the Second Count, awarding damages in an amount that has yet to be fully ascertained, but believed to be in excess of $325,826.85, together with reasonable costs, expenses and all allowances provided by law and/or deemed just and proper by this Court; and/or

(C)   as to the Third Count, awarding compensatory damages in an amount that has yet to be fully ascertained, but believed to be in excess of $325,826.85, together with interest at the maximum allowable rate together with such other and further relief as is deemed just and warranted; and/or

(D)   as to the Fourth Count, awarding compensatory damages in an amount that has yet to be fully ascertained, but believed to be in excess of $325,826.85, together with interest at the maximum allowable rate together with such other and further relief as is deemed just and warranted; and/or

(E)   as to the Fifth Count, awarding damages in an amount that has yet to be fully ascertained, but believed to be in excess of $325,826.85, together with reasonable costs, expenses and all allowances provided by law and/or deemed just and proper by this Court; and/or

(F)   as to the Sixth Count, granting an order awarding restitution from the Defendants

and disgorging all profits, benefits and other compensation obtained by LMT and the Defendants from their wrongful conduct; and/or

(G)    as to the Seventh Count, awarding punitive damages to be determined appropriate and warranted under applicable law; and/or

(H)    as to all Counts, awarding the Plaintiff pre-judgment and post-judgment interest pursuant to applicable law on all amounts awarded in this action; and

(I)    as to all Counts, awarding the Plaintiff the costs and expenses incurred in this action, including all reasonable attorneys' costs and fees; and

(J)    as to all Counts, granting such other and further relief, both legal and equitable as this Court deems just and proper and to which the Plaintiff may be justly entitled.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury of this action.

Dated: Tarrytown, New York
        September 15, 2014

MITCHELL POLLACK & ASSOCIATES, PLLC
Attorneys for Plaintiff, JOSEPH MARYANOW

By.: _____
        Eileen M. Burger, Esq. (EB-3002)
        Mitchell B. Pollack (MP-7591)
        150 White Plains Road, Suite 310
        Tarrytown, New York  10591
        (914) 332-0700
        (914) 332-9191 (fax)
        eburger@mpollack.com
        mpollack@mpollack.com